IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUNG INFRASTRUCTURE LTD. F/K/A MAMORU MINING LTD., <br><br> Plaintiff, <br> v. <br><br> BLOCKWARE MINING, INC., <br><br> Defendant. | Case No. 23 C 16195 <br><br> Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Blockware Mining, Inc.'s Motion to Dismiss the case pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6). This case centers around the performance of three Bitcoin mining contracts (collectively, the "Agreements"), which are governed by Illinois law. Plaintiff Hung Infrastructure Limited, f/k/a Mamoru Mining Ltd., alleges that Blockware fraudulently misrepresented its capacity to operate and failed to provide the required 98% uptime – the amount of time that the Bitcoin mining machines have been validating network transactions – in breach of the Agreements. For the reasons stated below, the motion to dismiss [20] is granted in part and denied in part.

### Discussion

A Rule 12(b)(1) motion seeks dismissal of a claim based on a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "If the federal courts lack subject matter jurisdiction, then [they] can go no further and must dismiss the suit." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the sufficiency of a complaint for purposes of a motion to dismiss, the Court "construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [the nonmoving party's] favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (*quoting Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

### Defendant's Rule 12(b)(1) Motion to Dismiss

Turning first to subject-matter jurisdiction, Blockware's concern that Hung's claims do not meet the amount in controversy for purposes of diversity jurisdiction lacks merit. The amount in controversy must exceed $75,000 at the time the claim is filed based on the claims initially filed. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). If a defendant contests the amount in controversy, then the plaintiff must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Claims will only

be dismissed for not meeting the amount in controversy if it is legally certain that the claim is for less than the jurisdictional floor. *Id.*

Blockware asserts that the limitation of liability provision prevents Hung from meeting the amount in controversy threshold. Hung counters that Blockware cannot rely on this provision to insulate itself against damages for fraud. "If there is a clearly valid limitation on liability which reduces the maximum possible judgment below the specified statutory minimum, the suit cannot be maintained." *Normand v. Orkin Exterminating Co., Inc.*, 193 F.3d 908, 910 (7th Cir. 1999). However, the Seventh Circuit has also stated that "[i]t is doubtful that a contractual limitation of liability would be held to be a bar to fraud." *Id.* at 911.

The Agreements' limitation of liability provisions state in relevant parts:

> 10.2 IN NO EVENT SHALL BLOCKWARE MINING BE LIABLE TO CUSTOMER… FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS… BLOCKWARE MINING'S LIABILITIES UNDER THIS AGREEMENT, WHETHER UNDER CONTRACT LAW, TORT LAW, WARRANTY, OR OTHERWISE, SHALL BE LIMITED TO DIRECT DAMAGES NOT TO EXCEED THE AMOUNTS ACTUALLY RECEIVED BY BLOCKWARE MINING FROM CUSTOMER IN THE 12 MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE CLAIM.
>
> 10.3 Customer's sole remedy for performance or non-performance of the terms of this Agreement shall be a refund of any fees paid to Blockware Mining for the current service month.
>
> 10.4 Customer agrees to look exclusively to Customer's insurer to recover for injury or damage in the even of any loss or injury, and releases and waives all right of recovery against Blockware Mining.

Compl. [1], Exs. B, C, D at §§ 10.2, 10.3, 10.4. As reflected above, there are competing provisions as to the customer's remedies. But, at this time, the Court need not interpret whether these provisions, or others, will limit damages in this case or whether Hung's claim for fraud damages is affected by these provisions. A motion to dismiss based on subject matter jurisdiction is not the appropriate place to determine whether these different liability provisions are conflicting or consistent with each other, in light of the need to view all inferences in Plaintiff's favor. *Dreampak, LLC v. Infodata Corp.*, 2019 WL 3410221, at *5 (N.D. Ill. July 29, 2019) (*citing Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (Ill. 2007)). Blockware received well over the $75,000 amount in controversy, and in fact, was paid $28,814,266.16 under the Agreements. *See* Doc. [29].[1] It is clear to this Court that the amount in controversy at the beginning of the suit is reasonably over the

---

[1] The Court has an independent duty to ensure it has subject matter jurisdiction and thus asked the parties to clarify their positions on the issue. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

$75,000 threshold and thus the Court retains subject matter jurisdiction. *Normand*, 193 F.3d at 910 (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

## Defendant's Rule 12(b)(6) Motion to Dismiss

The Complaint alleges three counts: (1) breach of contract; (2) fraudulent inducement; and (3) violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA). Defendant argues each of these counts should be dismissed pursuant to Rule 12(b)(6). The Court addresses each count below.

## Breach of Contract

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). The parties concur that the Agreements are valid, enforceable contracts. Blockware asserts that Hung's breach of contract claim: (1) failed to allege the element of substantial performance; (2) did not allege a breach; (3) has not alleged damages; and (4) is time-barred.

Illinois law defines substantial performance as the "honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential elements of the contract." *Solvay USA Inc. v. Cutting Edge Fabrication, Inc.*, 2022 WL 444116, at *3 (N.D. Ill. Feb. 11, 2022) (*citing LB Steel, LLC v. Carlo Steel Corp.*, 122 N.E.3d 274, 290 (Ill. App. Ct. 2018)). Whether a plaintiff substantially performed is a question of fact. At the motion to dismiss stage, the only question is whether a plaintiff has pled substantial performance. *Id. Solvay v. Cutting Edge* is instructive. There, the district court found that providing specifications and paying for a product is enough to meet the notice pleading regime for substantial performance. *Id.* Here, the Complaint similarly alleges that Hung paid initial setup fees pursuant to the Agreements in exchange for specified mining machines. Compl.[1] ¶¶ 27-33. This satisfies Federal Rule 8. *See* Fed. R. Civ. P. 8; *Solvay*, 2022 WL 444116, at *3.

A breach of contract claim requires an identifiable breach of a contract term. *Sevugan*, 931 F.3d at 614. This too has been satisfied as the Complaint asserts that Blockware failed to provide operations at an "[u]ptime of 98% or better" in breach of Section 1.1. Compl. [1] ¶¶ 40, 55. Blockware responds that: (1) "uptime" was not a guaranteed level of performance; and (2) that Hung has defined the term incorrectly – measuring it on a month-to-month basis instead of yearly. On the issue of performance level, the Agreements are ambiguous on whether they guaranteed a specific level of performance. The very first clause of the Agreements state that "[s]ervice shall be provided at an Uptime of 98% or better." Compl. [1] Exs. B, C, D at § 1.1. Later in the Agreements, other clauses indicate that Blockware could suspend service if hazardous conditions arise (*id.* at § 5.3); Blockware also made "no warranties or guarantees related to the availability of service" (*id.* at § 9). As to how uptime is measured, the contract is silent. Because of the ambiguity of contract terms, the breach issue cannot be resolved at the motion to dismiss stage and the claim must proceed. *See e.g.*, *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 770 (N.D. Ill. Apr. 26, 2021).

The final element for breach of contract – damages – has been sufficiently pled. As explained above, even if the limitation of liability provisions do apply (which is an open question), Hung pled damages by stating that it is entitled to actual damages caused by Blockware's breach in an amount to be proven at trial. Compl. [1] ¶¶ 29, 31, 33. Whether Hung will be able to recover the millions of dollars it paid Blockware, its alleged damages resulting from the fraud, or if it will be limited based on a twelve-month timeframe or the monthly service fee provision cannot be determined at this point in the proceeding.

Blockware's final argument on this count goes beyond the elements to allege that Hung's claims are time-barred. The Agreements were signed in August, September, and October of 2022 and Blockware argues that the Agreements require actions to be commenced one year after the cause of action has occurred. This is incorrect. The Agreements state that "[u]nless applicable law requires a longer period, any action" shall be commenced within one year. Compl. [1] Exs. B, C, D at § 10.3. A reasonable interpretation of this provision is that unless an applicable Illinois statute of limitation law requires a longer period, the statute of limitations is one year. Illinois contract law, which again governs the Agreements, has a statute of limitations of 10 years for breach of contract cases. 735 ILCS 5/13-206.

### Fraudulent Inducement

Plaintiff advances a theory of fraudulent inducement. The elements for fraudulent inducement under Illinois law are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induced the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (cleaned up). Rule 9(b) requires a party to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Seventh Circuit has held that a plaintiff must describe the "who, what, when, where, and how" of the fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

The Complaint states that "upon information and belief, [Blockware] did not intend to or have the ability to comply with the Uptime Requirement at the time it entered into the Agreements." Compl. [1] ¶ 48. After entering into the agreement, Hung instead learned that a separate mining facility in the same region owned by an affiliate of Blockware experienced regular energy curtailment and an average uptime of less than 70%. *Id.* at ¶ 49. Thus, Hung claims Blockware misrepresented that it would meet the uptime requirement to induce Hung to enter into the contract. *Id.* at ¶ 50.

Hung has not met the pleading requirement under Illinois law or Rule 9(b). Initially, Hung has not alleged a false statement of material fact that was known by Blockware to be false. The Court cannot infer that Blockware knew they had slower uptime simply because a separate plant in the region owned not by Blockware, but by an affiliate, had issues with uptime. There are no allegations that Blockware knew about the other facility and its problems with uptime, or that Blockware knew its new plant would suffer the same problems. Hung attempts to skirt this issue by arguing that Blockware and the affiliate shared a CEO, founder, and managing partner. Even when viewing the inferences in Hung's favor, sharing employees does not equate to sharing

4

knowledge. While this alone dooms Hung's fraudulent inducement claim, Hung has also failed to plead fraud with particularity. Hung does not indicate who made the false statements about uptime, what was included in those statements, when they occurred, and in what manner this induced Hung into signing the Agreements. The Court must dismiss Count II.

### UDTPA

Hung's final count arises under 815 ILCS 510, *et. seq.*, which prohibits entities from engaging in deceptive trade practices. This count must too be dismissed for the same reasons above – failure to meet the heightened pleading standard of Rule 9(b). *See Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, 2013 WL 4565382, at *9 (N.D. Ill. Aug. 27, 2013) (collecting cases). Hung argues it has met the willfulness standard for the UDTPA because it has sufficiently alleged fraud but, as explained above, the Complaint contains no allegations that Blockware deceptively represented the uptime to Hung.

### Conclusion

For the reasons stated above, Defendant's motion to dismiss is granted in part [20]. Count I will proceed. Count II and III are dismissed. Plaintiff may refile an amended complaint if it can cure the deficiencies and such an amendment is consistent with its obligations under Federal Rule of Civil Procedure 11. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519-20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). If Plaintiff does not file an amended complaint by August 1, 2024, then the dismissal of those counts will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated: July 19, 2024

_____
Sunil R. Harjani
United States District Judge